**In the Matter of SPECIALTY CARTAGE, INC., Debtor.**

**Bankruptcy No. 88–10521.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Aug. 18, 1989.

---

Eric N. Allen, Greenfield, Ind., for debtor.

Debbie Leonard, Sp. Asst. U.S. Atty., Fort Wayne, Ind., for creditor.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This is a voluntary case under Chapter 11. It is currently before the court on Debtor's objection to the claim filed on behalf of the Internal Revenue Service (IRS). All of the issues, save one, raised by the objection have subsequently been resolved. The remaining issue concerns the IRS' secured claim against the debtor. Both parties agree the secured claim totals $72,615.74. They do not, however, agree as to what this claim represents. Accordingly, the court has been called upon to determine the components of the IRS' secured claim.

The facts of this matter are not in dispute. It was submitted to the court for a decision based upon the parties' pre-trial statements and the briefs of counsel.

The total amount due the IRS is $135,-145.56, consisting of penalties totaling $30,-591.99 and $104,553.57 in taxes and interest. Of the total, $117,756.51 has been filed as a secured claim. The secured claim represents amounts due on account of unpaid employment taxes, together with interest and penalties, for the third and fourth quarters of 1986 and the first, second, and third quarters of 1987. According to the IRS' proof of claim, each of these liabilities was assessed and a notice of tax lien concerning them was filed prior to the date of petition.

Although the total amount filed as a secured claim is in excess of $117,000.00 the property which secures this claim is worth substantially less. Given the value of Debtor's assets and amounts due on account of liens which are superior the IRS, pursuant to 11 U.S.C. § 506(a) its secured claim is only $72,615.74. Since it is undersecured, a portion of its otherwise secured claim is treated as unsecured. Because of this, the court must determine which of the liabilities in question are secured by tax liens and which of those liabilities have no valuable lien securing them— in other words apportion the value of the security between the different amounts due on account of Debtor's underlying tax liability, together with the penalties and interest which have accrued or been assessed upon account of that liability. The issue becomes important because of the differing priority and treatment which is given to various obligations running in favor of the IRS. To the extent any of the amounts due are not secured claims, the

parties agree the tax liability and interest represent a priority unsecured claim, which must be paid in full in accordance with 11 U.S.C. § 1129(a)(9), while the penalties represent a general unsecured claim, which is not entitled to any priority.

Debtor asks the court to subordinate all of the tax penalties included in the secured claim to the amounts due on account of the underlying tax and interest. This will increase the IRS' non-priority claim, by including a greater portion of the tax and interest in the secured claim. It will also decrease the priority claim. The IRS, on the other hand, asks the court to make the allocation based upon the date the liabilities in question were assessed, beginning with the oldest, and, to the extent the liability for any particular period is only partially secured, pro-rate the remaining value of the collateral between the tax, interest and penalty due. This would have the effect of decreasing the IRS' non-priority claim, by considering a portion of the penalties as secured, while also increasing the priority claim, because of the inclusion of penalties as part of the secured claim.

The origin and existence of a lien for unpaid taxes is purely a statutory creation. In this instance, these issues are first governed by the Internal Revenue Code, which is Title 26 of the United States Code.

Should any taxpayer neglect or refuse to pay taxes due the United States, after any demand has been made, the amount of that liability, which includes not only the underlying tax but also interest and penalties, becomes a lien in favor of the United States. 26 U.S.C. § 6321. This lien arises at the time the assessment is made and continues until the entire obligation is satisfied or becomes unenforceable. 26 U.S.C. § 6322. It may then be perfected—in the sense that it becomes valid against third parties who subsequently acquire an interest in the taxpayer's property—by filing a proper notice concerning it. 26 U.S.C. § 6323.

There are, thus, three significant dates applicable to federal tax liens—the date of demand, the date of assessment, and the date notice is recorded. The lien does not arise until a demand for payment has been made. Once this occurs, the lien is effective as of the date the liability was assessed. This lien then becomes effective as to third parties upon recordation. The interaction of these three events should play an important role in determining the question of allocation.

The IRS' secured claim relates to five separate tax periods, the liability for which was assessed on five different dates. Notice of the liens securing these liabilities was properly filed on three separate dates. Debtor's liability for the third quarter of 1986 was assessed on May 18, 1987. The liability for the fourth quarter of 1986 was assessed on May 25, 1987. The liability for the first quarter of 1987 was assessed on July 13, 1987. Notice of the tax liens for these three periods was filed on July 31, 1987. The tax liability for the second quarter of 1987 was assessed on September 21, 1987 and its notice of tax lien was filed on December 14, 1987. The liability for the third quarter of 1987 was assessed on January 1, 1988 and the notice of tax lien concerning it was filed on March 25, 1988.

The effective date of each of these liens is the date of assessment. Because these liabilities were assessed on different dates, the liens securing each of them arose at different times. Therefore, in many ways, the IRS may be considered to hold five separate liens against the Debtor's property, which are secured to the extent of $72,615.74. It does not hold a single tax lien, neither does it hold three liens based upon the number of notices filed.

■ Because each of the tax liabilities in question is secured by a separate lien, which arose on the date of assessment, we must consider the priority they have vis-a-vis one another. "The basic federal priority standard is 'first in time, first in right.'" *In re Hamilton Associates, Inc.*, 66 B.R. 674, 679 (Bankr.D.Nev.1986) (citing *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954)). Applying this rule to the different liens in question persuades the court that the lien for each individual period should be given a separate priority based upon the date of

assessment. Thus, the entire liability for any period—tax, interest, and penalty, all of which are secured by the same lien—should be given priority over the liens for other periods which were assessed on subsequent dates. We should not and cannot rearrange the different components of the secured claims by reapportioning the various amounts due, without regard to the dates the liens arose. To do so would destroy the efficacy or validity of any particular lien, to the extent its components would be subordinated to any amount secured by a subsequent lien. Each separate lien should, instead, be given its own priority, to the full amount due, based upon its own date of assessment and should stand independently vis-a-vis the other tax liens based upon that date. This result is consistent not only with the philosophy supporting the general bankruptcy process but also with the legislative history associated with the current Bankruptcy Code.

▮ Philosophically, we must remember that bankruptcy is a collective process which is designed to maximize the value of a pool of assets for the mutual benefit of all who may have a claim upon them. Yet, in determining who may assert such a claim, "the starting point is legal entitlements that exist outside of bankruptcy." *Matter of American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir.1988). Consequently, the bankruptcy court must begin with rights and obligations as they exist under non-bankruptcy law, before determining the order in which the various claimants will share whatever may be available for distribution. *See Matter of Northwest Engineering Co.*, 863 F.2d 1313, 1315 (7th Cir.1988). In doing so, "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Thus, a secured creditor is generally entitled to receive the same protection during the bankruptcy process as it would receive had no bankruptcy ensued. *Butner, supra*, 99 S.Ct. at 918. Its non-bankruptcy entitlements should be respected. They should be altered only to the extent necessary to accomplish the ultimate goal of the collective process. This "[u]niform treatment of property interests ... serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.* (citing *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323).

Unlike the practice under the former Act, claims for penalties are now allowable and may share in a distribution of the estate's assets. There is, however, a decided and historic hostility to claims of this nature. Therefore, in Chapter 7 such claims are subordinated to the claims of other creditors. *See* 11 U.S.C. § 726. This hostility is so intense that the trustee may avoid a lien securing such a claim. *See* 11 U.S.C. § 724(a). Accordingly, were this a case under Chapter 7 Debtor's position would essentially be correct. This, however, is a case under Chapter 11 and neither § 724 nor § 726 directly apply. 11 U.S.C. § 103(b). More importantly, the traditional hostility to claims for penalties has not been completely carried over into Chapter 11, especially where these claims are secured.

The legislative history to § 724(a) reveals Congress fully intended that the Code and the bankruptcy court would recognize and respect the validity of a lien securing a claim for penalties in Chapter 11, even though that lien would receive dramatically different treatment under Chapter 7. As explained in both the House and Senate Reports:

> The lien is made voidable rather than void in chapter 7, in order to permit the lien to be revived if the case is converted to chapter 11, under which penalty liens are not voidable. To make the lien void would be to permit the filing of a chapter 7, the voiding of the lien, and the conversion to a chapter 11, simply to avoid a penalty lien, which should be valid in a reorganization case. H.Rep. No. 595, 95th Cong., 1st Sess. 382, *reprinted in* 9 Bkr–L Ed § 82:18, at 397; S.Rep. No.

989, 95th Cong., 2nd Sess. 96, *reprinted in* 9 Bkr–L Ed § 83:8, at 121.

Consequently, Congress was fully aware of the policies against claims for penalties and the liens which might secure them. Despite this, it consciously decided to respect those liens in Chapter 11, by permitting them to remain undisturbed. Given this congressional decision and the foundational role of non-bankruptcy rights, we should not dismember an otherwise valid secured claim merely because it happens to include a penalty.

■ This principle does not, however, completely answer all the questions before the court. In applying it, there will come a time when the value of the property supporting the IRS' tax liens will not be sufficient to fully satisfy the total liability for a particular period. Within this one period, then, we must determine how to apportion the remaining value among the lien's separate components. In this situation, we are no longer confronted with the philosophical importance of non-bankruptcy entitlements or congressional respect for the dignity of liens in Chapter 11. It is here that the traditional hostility to penalty claims may come into play. The full extent of the lien for this period is already in jeopardy—in the sense that some part of it is not supported by anything of value—and it must be treated as unsecured to some extent. Therefore, the court is free to apportion the available value among its various components without the fear of unnecessarily disturbing rights as they would otherwise exist.

In interpreting and applying the provisions of the old Act, the Supreme Court gave full effect to the hostility associated with penalty claims.

[T]he broad aim of the Act [is] to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is consistent with the type of claims involved. Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors.

[W]e find nothing that indicates a purpose to require the general creditors of a bankrupt to suffer because of penalties designed to be inflicted upon the bankrupt himself. *Simonson v. Granquist*, 369 U.S. 38, 40–41, 82 S.Ct. 537, 539, 7 L.Ed.2d 557 (1962).

These sentiments have been echoed time and again by lower courts in dealing with tax penalties under the Code. *See In re Merwede*, 84 B.R. 11 (Bankr.D.Conn.1988); *In re Patco Photo Corp.*, 82 B.R. 192 (Bankr.E.D.N.Y.1988); *Matter of Mansfield Tire Rubber Co.*, 80 B.R. 395 (Bankr. N.D.Ohio 1987); *In re Quality Sign Co. Inc.*, 51 B.R. 351 (Bankr.S.D.Ind.1985). When the court is confronted with an undersecured tax lien, which includes penalties assessed against a Chapter 11 debtor, this philosophy should be given effect in apportioning the value of the lien among the different liabilities it secures. This value should be allocated first to the principal and interest due on account of the tax and then to any penalties.

Applying this standard to the secured claims in question, all amounts due the IRS, tax, penalty, and interest, for the third and fourth quarters for 1986 will be considered as part of the IRS' secured claim. The amounts due on account of these liabilities consume $53,931.41 of the agreed upon $72,615.74 secured claim. This leaves $18,684.33 attributable to the taxes, interest, and penalties due on account of the third quarter of 1987. The total liability for this quarter is $37,618.09. Of this total, $30,829.46 is attributable to the tax and interest and $6,788.63 represents penalties. Since the underlying tax liability and interest exceed the value available to support the lien, all of the penalties for this period are unsecured.

The $72,615.74 secured claim of the IRS, therefore, consists of: (a) $20,373.54 in tax-

es, penalties and interest due on account of the third quarter of 1986; (b) $33,557.87 in taxes, penalties and interest due on account of the fourth quarter of 1986; and (c) $18,-684.33 representing a portion of the tax and interest due on account of the first quarter of 1987. Of the remaining amounts due for the first quarter of 1987, taxes and interest totaling $12,145.13 constitute an unsecured priority claim and penalties of $6,788.63 are a general unsecured claim. As to the rest of the IRS' claim, which is wholly unsecured, taxes and interest of $38,137.64 represent a priority claim and $5,458.42 is a general unsecured claim.

An appropriate order will be entered.