In re **MANCHESTER LAKES ASSOCIATES, Debtor.**

Bankruptcy No. 84–01551–A.

United States Bankruptcy Court,
E.D. Virginia.
Alexandria Division.

Aug. 21, 1990.

Lawrence H. Fischer, John Raftery, Deckelbaum, Ogens & Fischer, Washington, D.C., for Plan Administrator.

Dennis R. Bates, Sr. Asst. County Atty., Fairfax County, Fairfax, Va., for creditor.

Ronald Walutes, Walutes & Bedford, Annandale, Va., for debtor.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

The issue here arises upon an objection by Dominion Investments, Inc. ("DII"), plan administrator for Manchester Lakes Associates, to a proof of claim for prepetition tax penalties filed by the County of Fairfax, Virginia ("the County").

On December 7, 1984, an involuntary petition for relief was filed against Manchester Lakes Associates under Chapter 11 of the United States Bankruptcy Code ("the Code"). An order for relief was entered on March 28, 1985. 47 B.R. 798. The County timely filed a proof of claim on November 18, 1985 in the amount of $247,173.65 for taxes, interest, and penalties owed by the debtor for the years 1983 through 1985.[1] On December 17, 1985, this Court entered an order confirming a plan of reorganization ("the Plan"), which authorized DII to manage properties formerly held by the debtor and to implement the Plan.

After negotiations between the County and the debtor regarding the payment of the taxes owed, the parties agreed upon a payment schedule which encompassed all of the allegedly overdue taxes with the exception of penalties assessed upon real estate taxes in arrearage for the year of 1984 amounting to approximately $13,-481.39.[2] Counsel for the County of Fairfax filed a motion to determine tax liability. At the hearing, counsel for the debtor and the County ultimately agreed that the sole issue before the Court was whether section

---

1. The exact breakdown of the taxes assessed against Manchester Lakes is as follows: 1983 real estate tax and interest: $212.26; 1984 personal property tax, interest, and penalty: $397.52; 1984 real estate tax (on various properties), interest, and penalties: $162,596.29; 1985 real estate tax (on various properties), interest and penalties: $83,967.58.

2. We expect the parties to calculate the exact amount of prepetition tax penalties due in accordance with this opinion.

506(b) allowed for the recovery of the penalties in question. The Court took the County's motion under advisement. Supplemental memoranda were then filed by both counsel. For reasons set forth below, we deny payment of the County's claim as a secured claim under section 506(b) but allow said claim as an unsecured claim to be subordinated to the claims of all other general unsecured creditors.

The County of Fairfax asserts that its claim for unpaid prepetition taxes is secured by a statutory tax lien encumbering the debtor's real estate. As such, the County alleges, any claim for interest and penalties on that claim would be allowed pursuant to section 506(b) of the Code. DII responds by noting that section 506(b) distinguishes consensual from nonconsensual liens by enabling a creditor with an oversecured claim to collect fees, costs, or charges only if such items are provided for in the "agreement under which such claim arose[.]" *See* 11 U.S.C. § 506(b). DII asserts that the penalty which the government seeks to collect is not part of an agreement between the County and the debtor and, accordingly, the debtor is not liable for the same. With respect to the argument that the penalty must be considered as part of the County's "claim," the debtor contends that the County may not ignore the difference between a tax and its penalty when the Code itself distinguishes between the two.

In view of the parties' agreement that the issue at hand turns upon an interpretation of section 506(b), we begin our discussion with an examination of that section and its recent interpretation by the United States Supreme Court. Section 506(b) provides in pertinent part:

(b) [t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). The report of the Senate Committee on the Judiciary relating to section 506(b) indicates that:

[s]ubsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees (including attorney's fees), costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.

S.Rep. No. 989, 95th Cong., 2d Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854.[3]

Since the instant matter was taken under advisement, the United States Supreme Court has examined the language of section 506(b) in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). DII contends in supplemental memoranda that the ruling in *Ron Pair* is dispositive of the issue at hand, while the County maintains that the issue resolved by the Supreme Court is entirely inapposite.

In *Ron Pair*, the debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. 489 U.S. at ——, 109 S.Ct. at 1028. The United States filed a proof of claim for prepetition taxes, penalties, and interest which had accrued on the unpaid withholding and social security taxes. *Id.* The government's claim was perfected by a tax lien on the debtor's property. *Id.* Although the debtor's plan provided for the full payment of the prepetition claim, it did not provide for the payment of postpetition interest. The precise issue before the Court was whether section 506(b)

---

3. The legislative statements reported from the House and Senate further explain that:

[s]ection 506(b) of the House amendment adopts language contained in the Senate amendment and rejects language contained in H.R. 8200 as passed by the House. If the *security agreement* between the parties provides for attorneys' fees, it will be enforceable under title 11, notwithstanding contrary law, and is recoverable from the collateral after any recovery under section 506(c).

124 Cong.Rec. 32350, 32398 (1978) (emphasis supplied).

"entitles a creditor to receive postpetition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding." *Id.*

The Supreme Court observed that the conflict in interpretation of section 506(b) stemmed in part from the difference in the types of secured claims: voluntary, or consensual, secured claims, created by agreement between the debtor and the creditor; and involuntary secured claims, such as a statutory lien. *Id.* at 1030. In resolving the dispute over the meaning of section 506(b), the Supreme Court noted that the language contained in the section itself was clear. The Court explained:

[t]he relevant phrase in § 506(b) is: "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." "Such claim" refers to an oversecured claim. The natural reading of the phrase entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.

*Id.* at 1030.

The County is correct in noting that the Supreme Court in *Ron Pair* decided only that the government was entitled to recover under section 506(b), postpetition interest on its oversecured, nonconsensual tax claim. *See id.* at 1028, 1030–34. Contrary to DII's assertion, the *Ron Pair* Court did not definitively decide whether section 506(b) bars recovery of a prepetition nonconsensual claim for tax penalties.[4] In order to determine whether tax penalties are

allowable in the case at bar, it will be helpful to examine 11 U.S.C. § 93(j) of the former Bankruptcy Act, which was the last statutory provision to address the validity of tax penalty claims in bankruptcy proceedings. Section 93(j), commonly referred to as section 57(j), which was the original version of the statute, provided:

j. [d]ebts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law.

11 U.S.C. § 93(j), 66 Stat. 424 (1952) (repealed 1979) (original version at Bankruptcy Act of 1898, ch. 541, § 57(j), 30 Stat. 561).

Interpreting this former section, the United States Supreme Court established conclusively that prepetition non-compensatory penalty claims, whether secured or unsecured could not be asserted against the debtor's estate. *Simonson v. Granquist*, 369 U.S. 38, 40, 82 S.Ct. 537, 538, 7 L.Ed.2d 557 (1962). The reason for the strict prohibition against penalties stated by the *Simonson* Court was as follows:

[u]nquestionably [the] ... language [of § 57j] is broad enough to bar all penalties, whether secured by lien or not, and we think the section was designed to do precisely that. For it plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a "pecuniary" loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the *broad aim of the Act to provide for the conservation of the estates of insolvents to the end that there may be as equitable a distribution of assets as is*

---

4. *See Ron Pair,* 109 S.Ct. at 1028–34. We observe generally that section 506(b) does not govern the allowability of claims. *See* 11 U.S.C. § 506(b). Claims that are specifically disal-

lowed are outlined in section 502(b) of the Code, which does not specifically prohibit claims for prepetition tax penalties. *See* 11 U.S.C. § 502(b).

*consistent with the type of claims involved.* Moreover, the prohibition of all tax penalties in bankruptcy is wholly consistent with the policy of the penalty provisions themselves. Tax penalties are imposed at least in part as punitive measures against persons who have been guilty of some default or wrong. Enforcement of penalties against the estates of bankrupts, however, would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors.

*Id.* at 40–41, 82 S.Ct. at 538–539 (emphasis supplied). Because the Bankruptcy Reform Act of 1978 does not contain a provision similar to former section 57(j), which governed the allowability of penalty claims, we look for guidance on the tax penalty issue to the provisions of sections 726(a)(4) and 724(a), which automatically subordinate penalty claims for nonpecuniary losses in Chapter 7 cases.

Section 724(a) provides that "[t]he trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." 11 U.S.C. § 724(a). Section 726(a)(4), in turn, provides:

(a) *[e]xcept as provided in section 510 of this title,* property of the estate shall be distributed—

. . . .

4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, *to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim*[.]

11 U.S.C. § 726(a)(4) (emphasis supplied). The Notes of the Committee on the Judiciary Senate Report 95–989 ("Notes") pertaining to section 724(a) indicate that section 724(a) continues section 57(j)'s policy of

protecting unsecured creditors from the debtor's wrongdoing. The Notes explain:

[s]ubsection (a) of section 724 permits the trustee to avoid a lien that secures a fine, penalty, forfeiture, or multiple, punitive, or exemplary damages claim to the extent that the claim is not compensation for actual pecuniary loss. *The subsection follows the policy found in section 57j of the Bankruptcy Act of protecting unsecured creditors from the debtor's wrongdoing, but expands the protection afforded.* The lien is made voidable rather than void in chapter 7, in order to permit the lien to be revived if the case is converted to chapter 11, under which penalty liens are not voidable. To make the lien void would be to permit the filing of a chapter 7, the voiding of the lien, and the conversion to a chapter 11, simply to avoid a *penalty lien, which should be valid in a reorganization case.*

S.Rep. No. 989, 95th Cong., 2d Sess. 96, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5882 (emphasis supplied).

Committee Notes applicable to section 726(a)(4) explain:

[p]aragraph (4) provides that punitive penalties, including prepetition tax penalties, are subordinated to the payment of all other classes of claims, except claims for interest accruing during the case. In effect, these penalties are payable out of the estate's assets only if and to the extent that a surplus of assets would otherwise remain at the close of the case for distribution back to the debtor.

*Id.* at 5883.

■ We recognize that both sections 724(a) and 726(a)(4) refer to petitions filed under Chapter 7,[5] and that under section 726(a)(4), noncompensatory penalty claims are automatically subordinated to fourth priority in Chapter 7 cases.[6] Although section 726(a)(4) is not applicable to the subordination of tax penalty claims in Chapter 11 cases,[7] the principles of equitable subordi-

---

**5.** *See* 11 U.S.C. § 103(b) ("[s]ubchapters I and II of chapter 7 of this title apply only in a case under such chapter.").

**6.** *See* 11 U.S.C. § 726(a)(4).

**7.** *See* 11 U.S.C. § 103(b).

nation pursuant to 11 U.S.C. § 510(c)(1) do extend to Chapter 11 reorganizations.[8]

Section 510(c)(1) provides:

(c) [n]otwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]

11 U.S.C. § 510(c)(1). Congress clarified the meaning of section 510(c)(1) in the following passage from the Congressional Record:

[i]t is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor.

124 Cong.Rec. 32350, 32398 (1978).

Recent decisions have held that tax penalties or punitive damage claims are susceptible to subordination pursuant to section 510(c). See In re Airlift Int'l, Inc., No. 89–1053, —— F.Supp. —— (D.Fla. May 31, 1990) (LEXIS, Genfed library, Courts file) (affirming bankruptcy court's finding that the IRS's claim pursuant to 26 U.S.C. § 4971 was punitive in nature and should be equitably subordinated to the claims of the general creditors pursuant to 11 U.S.C. § 510(c)); In re Burden, 109 B.R. 107, 111 (E.D.Pa.1989) (affirming bankruptcy court's decision to subordinate, pursuant to § 510(c), prepetition tax penalties in a Chapter 13 case).

The rationale behind subordination of penalty claims in bankruptcy proceedings stems from the classification of both tax penalty and punitive damage claims as nonpecuniary losses originating from the debtor's wrongdoing. Under this rationale, the general unsecured creditors should not be penalized for such losses in view of the fact that tax penalties are to punish late-paying debtors, not the creditors. See In re Virtual Network Services Corp., 902 F.2d 1246, 1250 (7th Cir.1990) (affirming the district court's reliance on section 510(c)(1) in subordinating an IRS prepetition tax penalty claim in a liquidating Chapter 11 and noting that "the purpose behind ... tax penalties [is] to punish those who fail to abide by the taxing structure, and to deter those who might be inclined to avoid tax payment ... [a]s such ... allowing the IRS to recover its nonpecuniary loss claims along with others who have actually 'invested' in VNS and lost would be unfair on these facts.");[9] In re Merwede, 84 B.R. 11, 14 (Bankr.D.Conn.1988) (subordinating IRS tax penalty in a Chapter 13 case and noting that "[t]he subordination of penalty claims is necessary to avoid the inequity of requiring innocent creditors to share the cost of a debtor's misconduct."); In re Colin, 44 B.R. 806, 810 (Bankr.S.D.N.Y.1984) (subordinating under section 510(c), punitive damage portion of claim in Chapter 11 reorganization and noting that penalty claims "should not be allowed to share in pari passu with other general unsecured creditors" since doing so would result in innocent creditors paying for the debtor's alleged misconduct.).

In conclusion, we find that the County's claim for prepetition tax penalties will not be allowed as a secured claim under section 506(b) but will be allowed as an unsecured claim subordinated to the claims of the general unsecured creditors.

An appropriate order will enter.

---

8. See 11 U.S.C. § 103(a) (providing that "chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title.").

9. We stress that the Seventh Circuit subordinated the IRS's prepetition tax penalty claim pursuant to section 510(c)(1) even though the IRS was not guilty of any inequitable conduct. See In re Virtual Network Services, Corp., 902 F.2d at 1250.