**In re BRENTWOOD OUTPATIENT LTD., d/b/a Brentwood Outpatient Medical Center, Debtor.**

Bankruptcy No. 389–05929.

United States Bankruptcy Court, M.D. Tennessee.

Dec. 13, 1991.

William L. Norton, III, Boult, Cummings, Conners & Berry, Nashville, Tenn., for Bondholder Committee.

Steve Jordan, Yost & Robertson, Franklin, Tenn., for Williamson County.

MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question is whether Williamson County's oversecured claim for real property taxes includes statutory penalties, fees and costs. The claim includes penalties, but does not include fees and costs.

## I.

The debtor filed Chapter 11 in August of 1989. A plan proposed by the Bondholder Committee was confirmed on May 14, 1991. The confirmed plan provides for payment in full of the allowed secured claim of Williamson County.

Williamson County asserts a secured claim for 1989 real property taxes plus interest, penalties, fees and costs. The value of the property securing the County's claim exceeds the amount of that claim. The Bondholder Committee concedes the County's right to post-petition interest, *see United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), but the Committee contests the County's claim for statutory penalties, fees and costs.

## II.

TENN.CODE ANN. § 67–5–2101 (1989) provides:

The taxes assessed by ... a county ... upon any property of whatever kind, and all penalties, interest, and costs accruing thereon, shall become and remain a first lien upon such property from January 1 of the year for which such taxes are assessed.

TENN.CODE ANN. § 67–5–2010 (1989) provides:

Penalty and interest.—(a)(1) To the amount of tax due and payable, a penalty of one half of one percent (.5%) and interest of one percent (1%) shall be added on March 1, following the tax due date and on the first day of each succeeding month....

Under TENN.CODE ANN. §§ 67–5–2101 and 2010 (1989), Williamson County's lien for taxes also secures its right to payment of penalties and costs.[1] At the petition in August of 1989, the County's claim for penalties with respect to 1989 taxes was unmatured and would mature beginning March 1, 1990. That the County's right to payment of penalties was unmatured does not defeat its status as a claim in bankruptcy. *See* 11 U.S.C. § 101(5) (" 'claim' means ... right to payment, whether ... matured, unmatured....").

Section 502 of the Bankruptcy Code governs *allowance* of claims. Upon objection, § 502(b)(1) disallows any portion of a claim that is unenforceable against the debtor and property of the debtor "under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Section 502(b)(2) disallows "unmatured interest." 11 U.S.C. § 502(b)(2). Lack of maturity is not a bar to *allowance* of the County's claim for penalties or costs.

"Applicable law" for § 502(b)(1) purposes includes bankruptcy law. The Bondholder Committee cites 11 U.S.C. § 506(b) as "applicable law" that disallows penalties, fees and costs.

Section 506(b) of the Bankruptcy Code addresses entitlement to "interest ... fees, costs or charges" with respect to oversecured claims:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.·

---

1. The County claims a right to payment of its post-petition attorneys' fees. Although the Tennessee statute mentions "costs" but not "fees," *see* TENN.CODE ANN. § 67–5–2101 (1989), reproduced above, even if "costs" includes attorneys' fees, the County's right to post-petition fees is not contained in an agreement and thus is not allowable in bankruptcy. *See* discussion of § 506(b) *infra*.

Section 506(b) reverses the effect of § 502(b)(2) with respect to post-petition interest for oversecured claim holders. In *Ron Pair*, the Supreme Court held that § 506(b) allows post-petition interest to both consensual and nonconsensual oversecured claim holders. The Supreme Court interpreted § 506(b) by reference to pre-Code case law and with acute attention to the grammatical structure of the section. The Court concluded that the rules for allowance of post-petition interest to oversecured claim holders are different from the rules for allowance of fees, costs or charges:

> Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.

*Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030.

Section 506(b) as interpreted by the Supreme Court in *Ron Pair* requires disallowance of Williamson County's claim for post-petition fees and costs because Williamson County's claim arose by operation of law and not by agreement.

### III.

The Bondholders argue that *Ron Pair* interprets § 506(b) also to preclude allowance of penalties to an oversecured, nonconsensual lien holder. At least three courts have interpreted *Ron Pair* to affect the allowance of penalties to nonconsensual lien holders. *See In re Parr Meadows Racing Ass'n, Inc.*, 880 F.2d 1540, 1549 (2d Cir.1989); *In re California Wholesale Elec. Co.*, 121 B.R. 360, 366–67 (Bankr. C.D.Cal.1990); *In re Pointer*, 113 B.R. 285, 291 (Bankr.N.D.Tex.1990). In *Parr Meadows*, the Second Circuit precluded secured status for tax penalties on the following theory:

**2.** Former § 57j, 11 U.S.C. § 93(j) (repealed 1979), excepted from disallowance "pecuniary

*Ron Pair* also answers the question whether, under § 506(b), the county is entitled to priority on its penalty claims. Under the bankruptcy code, "[r]ecovery of fees, costs, and charges" is allowed "only if they are reasonable and provided for in the agreement under which the claim arose." In the absence of such an agreement, fees and costs are not recoverable. *Ron Pair*, 109 S.Ct. at 1030.

Here, the claims for penalties arose, not under an agreement between the parties, but by operation of law under the tax act. Consequently, ... § 506(b) did not apply to penalties....

880 F.2d at 1549. *California Wholesale Elec., Co.* cites *Parr Meadows* verbatim and reaches the same conclusion. 121 B.R. at 366–67. *In re Pointer* follows *Parr Meadows* but describes as dicta any inference from *Ron Pair* with respect to the allowance of penalties to the holder of an oversecured, nonconsensual lien. 113 B.R. at 291.

*Parr Meadows, California Wholesale Elec. Co.* and *Pointer* neither cite nor discuss a contrary line of cases dealing with the allowance of penalties to oversecured, nonconsensual lien holders. *See In re Manchester Lakes Assoc.*, 117 B.R. 221 (Bankr.E.D.Va.1990); *Matter of Specialty Cartage, Inc.*, 115 B.R. 164 (N.D.Ind.1989); *In re Stack Steel & Supply Co.*, 28 B.R. 151 (Bankr.W.D.Wash.1983); *In re Mitchell*, 39 B.R. 696 (Bankr.D.Or.1984); *In re Russo*, 63 B.R. 335 (Bankr.D.Mass.1986); *In re Seneca Balance, Inc.*, 114 B.R. 378 (Bankr.W.D.N.Y.1990).

As explained by Judge Bostetter in *Manchester Lakes Assocs., Ron Pair* "did not definitively decide whether section 506(b) bars recovery of a prepetition, nonconsensual claim for tax penalties." 117 B.R. at 223. In *Ron Pair*, the Supreme Court interpreted § 506(b) in accordance with pre-Code case law. Under § 57j of the former Bankruptcy Act, debts owing to a state or subdivision "as a penalty or forfeiture shall not be allowed...." 11 U.S.C. § 93(j) (repealed 1979).[2] *Manchester Lakes Assocs.,*

loss" sustained by the claimant.

117 B.R. at 223. The Supreme Court had interpreted § 57j broadly to prohibit allowance of tax penalty claims without regard to whether the claim was secured or unsecured. *See Simonson v. Granquist*, 369 U.S. 38, 39–40, 82 S.Ct. 537, 538–39, 7 L.Ed.2d 557 (1962).

The Bankruptcy Reform Act of 1978 contains no provision similar to former § 57j applicable to Chapter 11 cases. Several sections of the Code deal specifically with claims for penalties in Chapter 7 cases. Section 726(a)(4) provides for automatic subordination of noncompensatory penalty claims in Chapter 7 cases. Section 724(a) makes liens securing noncompensatory penalty claims voidable by the trustee in a Chapter 7 case. As Judge Bostetter documents, the legislative history of §§ 724 and 726 demonstrates that Congress contemplated that liens securing penalties *would be valid in Chapter 11 cases* following enactment of the Code:

> The Notes of the Committee on the Judiciary Senate Report 95–989 ("Notes") pertaining to section 724(a) indicate that section 724(a) continues section 57(j)'s policy of protecting unsecured creditors from the debtor's wrongdoing. The Notes explain:
>
>> [s]ubsection (a) of section 724 permits the trustee to avoid a lien that secures a fine, penalty, forfeiture, or multiple, punitive, or exemplary damages claim to the extent that the claim is not compensation for actual pecuniary loss. *The subsection follows the policy found in section 57j of the Bankruptcy Act of protecting unsecured creditors from the debtor's wrongdoing, but expands the protection afforded.* The lien is made voidable rather than void in chapter 7, in order to permit the lien to be revived if the case is converted to chapter 11, under which penalty liens are not voidable. To make the lien void would be to permit the filing of a chapter 7, the voiding of the lien, and the conversion to a chapter 11, simply to avoid a *penalty lien, which should be valid in a reorganization case.*

S.Rep. No. 989, 95th Cong., 2d Sess. 96, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5882 (emphasis supplied).

> Committee Notes applicable to section 726(a)(4) explain:
>
>> [p]aragraph (4) provides that punitive penalties, including prepetition tax penalties, are subordinated to the payment of all other classes of claims, except claims for interest accruing during the case. In effect, these penalties are payable out of the estate's assets only if and to the extent that a surplus of assets would otherwise remain at the close of the case for distribution back to the debtor.

*Id.* at 5883.

117 B.R. at 224. *See also In re Specialty Cartage, Inc.*, 115 B.R. at 167–68 ("Consequently, Congress was fully aware of the policies against claims for penalties and the liens which might secure them. Despite this, it consciously decided to respect those liens in Chapter 11 by permitting them to remain undisturbed. Given this congressional decision and the foundational role of non-bankruptcy rights, we should not dismember an otherwise valid secured claim merely because it happens to include a penalty."); *In re Stack Steel & Supply Co.*, 28 B.R. at 155 ("In any event the legislative history to the Code clearly indicates that lien-secured penalties were not intended to be avoidable in Chapter 11 cases.... Therefore, as long as this case remains in Chapter 11, this Court is constrained to allow the claim for penalties secured by pre-petition tax liens."); *In re Russo*, 63 B.R. at 337 ("The Code does not allow penalty claims in Chapter 7 liquidations that would impinge on creditors, 11 U.S.C. § 726(a)(4). However, the taxing authority is allowed to collect penalties in Chapter 11. The rationale for the different treatment is that in liquidation the creditors, not the debtor, would be penalized, while in Chapter 11, the debtor continues in business and therefore, bears the penalty."); *In re Seneca Balance, Inc.*, 114 B.R. 378 ("The vitality of a valid tax lien, which includes penalties and interest on the same,

has been historically respected by the Legislature and the Judiciary.").

The Supreme Court in *Ron Pair* did not cite or analyze § 57j of the former Act, did not trace the development of §§ 724 or 726 and did not mention the allowance of penalties in Chapter 11 cases. These matters were not before the Court. Although the taxing authority's claim in *Ron Pair* included penalties, allowance of penalties was neither at issue nor addressed by the Court in its decision.

*Parr Meadows* did not analyze § 57j of the former Act or consider that tax penalty liens are protected in Chapter 11 cases under the Code. *Parr Meadows* was (converted to) a Chapter 7 case. Penalties are treated differently by the Code in Chapter 7 than they are in Chapter 11 cases.[3] *See* 11 U.S.C. §§ 724(a) and 726(a)(4). The *Parr Meadows* court acknowledged that § 726(a)(4) would determine "in what order the county's penalty claims should be satisfied in relation to other creditors ... [I]f any money remains after the secured creditors' and other, higher priority claims are satisfied, the county can recover its penalty claims from the estate." 880 F.2d at 1549. Section 724(a) works in concert with § 726(a)(4) in Chapter 7 cases to produce the result the Second Circuit seems to have desired. Under § 724(a) the Chapter 7 trustee in *Parr Meadows* could have avoided the (noncompensatory) penalty lien of the taxing authority. The Second Circuit's use of § 506(b) to accomplish what Congress intended for § 724(a) is not benign. Section 506(b) applies in all chapters, but Congress intended different treatment for penalty liens outside of Chapter 7.

■ The *Parr Meadows* holding that nonconsensual penalty liens are not secured because they are not provided for by agreement fails statutory analysis because penalties are not "fees, costs, [or] charges" for purposes of § 506(b). The legislative history to § 506(b) does not reveal that "fees, costs [or] charges" were intended to include "penalties." The drafters of the Bankruptcy Code elsewhere used the words "penalties," "fees," "costs" or "charges" as if their meanings are distinct. *See, e.g.,* 11 U.S.C. § 107(a) (access to court records without "charge"); 11 U.S.C. § 322(c) (trustee not liable personally for "penalty or forfeiture"); 11 U.S.C. § 328(a) ("contingent fee"); 28 U.S.C.S. § 1930 (Law.Co-op.1989) (bankruptcy "fees"); 28 U.S.C.S. § 1930 note on Bankruptcy Court Fee Schedule 819 (Law.Co-op.Supp.1991) ("The clerk shall assess a *charge* of up to three percent....") (emphasis added); 11 U.S.C. § 507(a)(7)(G) ("the actual, necessary *costs*"); 11 U.S.C. § 503(b)(1)(C) ("any fine, penalty"); 11 U.S.C. § 503(b)(6) ("the fees and mileage"); 11 U.S.C. § 505(a) ("the amount ... of any ... penalty"); 11 U.S.C. § 507(a)(1) ("any fees and charges"); 11 U.S.C. § 726(a)(4) ("fine, penalty, or forfeiture"). *See also* Fed.R.Bankr.P. 7054(b) ("The court may allow costs....").

■ The dictionary definitions of these words are dissimilar. "Penalties" conventionally include some concept of punishment. BLACK'S LAW DICTIONARY 1290 (4th ed. rev.1968). "Charges" involve ordinary duties, burdens or obligations. BLACK'S at 294–95. A "fee" usually includes compensation for goods or services. BLACK'S at 740–41. "Costs" typically include reimbursement of expenses to an officer or agency. BLACK'S at 415–16.

The Tennessee statute that creates the liens here at issue separately identifies the taxing authority's right to recover costs and penalties. *See* TENN.CODE ANN. §§ 67–5–2101 and 67–5–2010 (1989), reproduced above.

In many other contexts, Congress has recognized that "penalties" are different from "fees", "costs" or "charges." *See, e.g.,* 5 U.S.C.S. § 551(10) (Law.Co-op.1989) ("sanction" for purposes of the Administrative Procedure Act includes "imposition of penalty or fine;" assessment of *costs, charges,* or *fees* are separately allowed); 16 U.S.C.S. § 810(b) (Law.Co-op.1978) ("*charges and penalties*" with respect to licensees under Federal Power Act) (em-

---

3. The Second Circuit in *Parr Meadows* did not rely upon this distinction to reach its conclusion that nonconsensual liens for penalties are denied secured status.

phasis added); 22 U.S.C.S. § 4209 (Law.Co-op.1982) (collection of unlawful *charges and penalties* by consular officers); 43 U.S.C.S. § 465 (Law.Co-op.1980) (*charges and penalties* payable to the Secretary of Interior); 43 U.S.C.S. § 478 (Law.Co-op. 1980) (construction *charges* and "a *penalty* of [one] per centum thereof" payable by any water right applicant or entryman) (emphasis added); 47 U.S.C.S. § 205 (Law. Co-op.1981) (*charges and penalties* payable to Federal Communication Commission).

The precise use of language and punctuation in § 506(b), on which the Supreme Court relied in *Ron Pair*, favors the conclusion that the section does not address penalties. Such a reading of § 506(b) makes sense of §§ 724 and 726, makes sense of the legislative history of the Code with respect to former § 57j,[4] accounts for the failure of Congress to reenact § 57j and leaves oversecured claim holders in Chapter 11 cases with the more favorable position that Congress intended for them.

■ If § 506(b) is inapplicable, no "applicable law" disallows claims for tax penalties in a Chapter 11 case.[5] Penalties to Williamson County that mature post-petition are allowed as part of its oversecured claim.

This interpretation of § 506(b), *Ron Pair* and the conflicting lines of authority leads to one odd outcome. The Code allows penalties to the holder of an oversecured, non-consensual tax claim in a Chapter 11 case, but § 506(b) and *Ron Pair* preclude allowance of post-petition fees, costs and charges. Arguably, fees, costs and charges are more in the nature of "compensation" than are penalties. Elsewhere, the Code demonstrates Congressional intent to treat compensatory claims by taxing authorities more favorably than non-compensatory claims. *See, e.g.,* 11 U.S.C.

§§ 724(a), 726(a)(4) and 507(a)(7)(G) (excluding from the seventh priority penalties related to a tax claim if the penalty is not in compensation for actual pecuniary loss).

History may explain this wrinkle in Chapter 11 cases under the Code. Under the former Bankruptcy Act, *contractual* rights to attorneys' fees, if valid under state law, were enforceable as part of an oversecured claim in bankruptcy. *See Security Mortgage Co. v. Powers*, 278 U.S. 149, 153–54, 49 S.Ct. 84, 85–86, 73 L.Ed. 236 (1928); *In re Martin*, 761 F.2d 1163, 1168 (6th Cir.1985). This rule was not changed with the enactment of the Code. In contrast, as demonstrated above, penalties were not allowed to even an oversecured claim holder by operation of former § 57j. The Congressional decision to eliminate § 57j and to allow penalty claims in Chapter 11 cases left a slight incongruity in the law with respect to "compensatory" fees, costs and charges claimed by nonconsensual lien holders in Chapter 11 cases.

### IV.

The Bondholder Committee argues that the accrual of post-petition interest on the oversecured claim of Williamson County terminates on June 1, 1991, the effective date of the confirmed plan. Because of this litigation, Williamson County was not paid its claim in full on the effective date of the plan and the County asserts its right to continue to accrue interest through the date it is actually paid. There is some authority for this proposition. *See, e.g., Oppenheimer v. Oldham*, 178 F.2d 386, 389 (5th Cir.1949) ("[T]he appellant was entitled to receive the full amount of his principal debt, together with interest accrued thereon *to the date of payment.*") (emphasis added).

---

4. Section 57j of the former Act, 11 U.S.C. § 93(j) (repealed), acknowledged by its own terms that *penalties* and *costs* were distinct concepts: "a *penalty* ... shall not be allowed, except for ... pecuniary loss ... with reasonable and actual *costs....*" (emphasis added).

5. Not presented is the question whether equitable subordination under 11 U.S.C.

§ 510(c)(1) should be applied in this or other Chapter 11 cases to affect distributions to penalty lien holders. Also not presented are defenses that might be raised under applicable state law to collection of penalties—e.g., nonbankruptcy restrictions on collection of "penalties" from mortgagors. *See, e.g., Mack Fin. Corp. v. Ireson,* 789 F.2d 1083 (4th Cir.1986).

The usual operation of § 506(b) with respect to oversecured claim holders in reorganization cases is that interest accumulates through the effective date of the plan. On the effective date of the plan, the amount of the claim is fixed, and that amount is then subject to payment consistent with the terms of the plan.[6] Because Williamson County is a fully secured claim holder, its claim at the effective date of the plan would be entitled to "present value" in a Chapter 11 case. *See* 11 U.S.C. §§ 1129(a)(7) and 1129(b)(2)(A)(i)(II). Williamson County is thus entitled to accrue interest through the effective date of the plan. After the effective date, Williamson County is entitled to interest through the date of payment to insure payment of the present value of its allowed secured claim.[7]

An appropriate order will be entered.

### ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that Williamson County's oversecured claim for real property taxes includes statutory penalties, but not fees and costs. Interest accrues on Williamson County's claim until the effective date of the plan under § 506(b) and thereafter until paid to provide the present value of the County's claim.

IT IS SO ORDERED.

ENTERED this 13 day of December, 1991.

---

**6.** *See In re Hildreth*, 43 B.R. 721, 722 (Bankr.D.Idaho 1984); *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 398–99 (Bankr. W.D.Tenn.1991).

**7.** The *rate* of interest payable to a nonconsensual, oversecured lien holder under *Ron Pair* and/or § 506(b) for the period from the filing to the effective date of the plan and the rate applicable under § 1129 after the effective date of the plan have not been contested in this proceeding.