**IN RE BRENTWOOD OUTPATIENT, LTD., d/b/a Brentwood Outpatient Medical Center, Debtor.**

No. 3:92–0330.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 17, 1993.

William J. Yost, Yost and Robertson, Franklin, TN, for Williamson County.

William LaFayette Norton, III, Boult, Cummings, Conners & Berry, Nashville, TN, for Official Bondholders Committee.

Thomas Harvel Forrester, Gullett, Sanford, Robinson & Martin, Nashville, TN, for Brentwood Outpatient, Ltd.

## MEMORANDUM

WISEMAN, District Judge.

### I.

The Debtor, Brentwood Outpatient, Ltd., ["Debtor"] filed a Chapter 11 petition in August, 1989. Williamson County ["County"] asserted a secured claim in January, 1990, for unpaid 1989 real property taxes on a three story medical facility the Debtor owned in Brentwood, Tennessee ["the property"]. In May, 1991, the County asserted a secured claim in the amount of $41,543.60 for 1989 real property taxes. Of this amount, the County requested $29,961.12 for the base tax, $4494.17 for interest, $2247.08 for penalties, $2996.11 for attorney's fees, and $1845.12 for court costs. The interest, penalties, fees, and costs had accrued post-petition since February 28, 1990. The value of the property exceeded the amount of taxes in dispute.

On May 31, 1991, the Debtor's Bondholder Committee ["Committee"] objected to the County's claim, arguing that the penalties, fees, and costs asserted by the County

to be due and payable were not authorized under 11 U.S.C. § 506(b). The Committee did not object to the County's claim for base taxes and interest which had accrued to the effective date of the confirmed plan, June 1, 1991.

■ By order entered December 18, 1991, the U.S. Bankruptcy Court, Judge Lundin, allowed the County's claim in part and denied it in part. *In re Brentwood Outpatient Ltd.*, 134 B.R. 267 (Bankr. M.D.Tenn.1991). Judge Lundin allowed the County's secured claim to include penalties and the stipulated interest, but denied costs and attorneys' fees. *Brentwood Outpatient Ltd.*, 134 B.R. at 270, 273. Judge Lundin also held that post-petition interest ceased to accrue on the effective date of the plan. *Brentwood Outpatient Ltd.*, 134 B.R. at 274. On March 20, 1992, the Bankruptcy Court denied the County's motion to alter or amend the Court's order. The County appealed to this Court and the Committee cross-appealed.

This Court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C.A. § 158(a) (West Supp.1992).

**II.**

The issues presented raise only questions of law which are reviewable *de novo* by this Court. *BancBoston Mortgage Corp. v. Ledford*, 127 B.R. 175, 177 (M.D.Tenn. 1991).

**III.**

A. *Constitutionality of denying the County's costs and fees claims.*

The County argues that Congress did not intend in 11 U.S.C. Section 506 to destroy a state's sovereign power to tax by destroying a portion of the state's tax lien in bankruptcy. The County further argues that if Congress did so intend, that act of destroying a state's sovereign power to tax real property located within its borders is unconstitutional because the Tenth Amendment to the United States Constitution reserves the power to tax real property to the states. *See* Brief of Williamson County, Tennessee at 6 ["Appellant's Brief"]. The

County asserts that "any construction of 11 U.S.C. Section 506 that would somehow destroy the county's tax lien for post-petition attorney's fees and costs would be antithetical to the state's sovereign power to tax and would infringe on the Tenth Amendment." *Id.* at 12.

The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. The Constitution does, of course, grant to Congress the power to establish bankruptcy laws. Article I, Section Eight of the Constitution provides: "Congress shall have Power ... to establish ... uniform laws on the subject of Bankruptcies throughout the United States...." U.S. CONST. art. I, § 8, cl. 4. Of course, this power is not unfettered. *See, e.g., Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (holding that Congress's power to establish bankruptcy law is subject to the prohibitions of the Fifth Amendment). The question raised in this appeal is whether the Tenth Amendment imposes any prohibitions on the bankruptcy power.

■ The County argues that the power of taxation is fundamental to the very existence of state government. Appellant's Brief at 9 (citing *State Bd. of Tax Comm'rs of Ind. v. Jackson*, 283 U.S. 527, 537, 51 S.Ct. 540, 543, 75 L.Ed. 1248, 1255–56 (1931)). The County also asserts that the Supreme Court has held that "a state's internal fiscal affairs are 'not subject to control or interference by the national government, unless the right to do so is definitely accorded by the Federal Constitution.'" Appellant's Brief at 14 (quoting *Ashton v. Cameron County Water Improvement Dist. No. One*, 298 U.S. 513, 528, 56 S.Ct. 892, 895, 80 L.Ed. 1309, 1312–13 (1936)). The County further contends that a county's tax lien secures not only the tax, interest and penalty, but also costs and fees. Appellant's Brief at 9. From these propositions, the County concludes that any

attempt by Congress via Section 506(b)[1] of the Bankruptcy Code to destroy the County's power to obtain costs and fees arising from a nonconsensual lien based upon unpaid property taxes is a violation of the Tenth Amendment.

The County's arguments are, in the Court's opinion, without merit. Congress, through its bankruptcy power, may circumvent a state's power to tax implicit in the Tenth Amendment. *Matter of CCA Partnership*, 70 B.R. 696 (Bankr.D.Del.1987) *aff'd* 72 B.R. 765, *aff'd* 833 F.2d 303 (3d Cir.1987) (without opinion). Indeed, the Bankruptcy Court for the Middle District of Tennessee has stated:

> [T]he Supreme Court has recognized as a well-settled principle that a state's power to assess and collect state taxes must submit to the federal rules and regulations controlling the administration of the bankruptcy estate. *See, e.g., Gardner v. New Jersey*, 329 U.S. 565, 575–579, 67 S.Ct. 467, 472–474, 91 L.Ed. 504 [515–516] (1947); *New York v. Irving Trust Co.*, 288 U.S. 329, 331–333, 53 S.Ct. 389, 390–391, 77 L.Ed. 815 [817–818] (1933).... As the Supreme Court explained in *New York v. Irving Trust Co.*, 288 U.S. at 333, 53 S.Ct. at 391 [77 L.Ed. at 818]:
>
>> "If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated."

*In re Nashville White Trucks, Inc.*, 22 B.R. 578, 583 (Bankr.M.D.Tenn.1982). Moreover, in *Gardner v. New Jersey*, the Supreme Court emphasized the need for a state to pursue its tax lien within the framework of the federal bankruptcy laws by stating that if a bankruptcy court lacked the power to address state tax liens,

that lack of authority would "seriously impair the power of the court to administer the estate and adversely affect the power of ... the court to promulgate a reorganization plan." *Gardner*, 329 U.S. at 577, 67 S.Ct. at 473, 91 L.Ed. at 516.

The County, nevertheless, argues that an extinguishment of statutorily provided tax lien costs and fees pursuant to Section 506(b) violates the Tenth Amendment because it interferes with a state's sovereign governmental power to tax real property. The Supreme Court, however, has stated that "State sovereign interests ... are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 552, 105 S.Ct. 1005, 1018, 83 L.Ed.2d 1016, 1034 (1985) (holding that there is nothing in the overtime and minimum-wage requirements of the Fair Labor Standards Act that is destructive of state sovereignty or violative of the Tenth Amendment). Although in *Garcia* the Supreme Court was considering only Congress's power to regulate interstate commerce and did not address Congress's power to establish a uniform bankruptcy law, the *Garcia* analysis is applicable to both powers, as both are powers delegated to Congress by the Constitution. *In re Kamstra*, 51 B.R. 826, 832 (Bankr. W.D.Mich.1985). According to *Garcia*, a court may impose a substantive restraint on Congress's establishment of bankruptcy laws, such as holding that extinguishment of tax lien costs and fees under Section 506(b) is unconstitutional, only if the court were satisfied that the interests of local and state government in their tax revenues inherently could not have been represented in Congress or "the national political process" and that such a holding compensated for the process to consider the need of local and state government tax revenues.

---

1. Section 506(b) of the Bankruptcy Code provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount

of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C.A. § 506(b) (West Supp.1992).

Such a situation does not exist here. Congress chose not to allow fees, costs, or charges unless those were provided for under a consensual agreement. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989) (interpreting § 506(b) and stating that "in the absence of an agreement, post-petition interest is the only added recovery available"). Moreover, Section 506(b) does not distinguish between local, state or federal tax liens. Obviously, local, state, and federal tax liens do not arise from a consensual agreement but are statutorily provided for. Therefore, because federal revenue interests are identical to state and local taxing interests, it is clear that state interests were represented in the national political process and were not ignored when Section 506(b) was adopted. *See Kamstra*, 51 B.R. at 832; *Matter of Cropper Co., Inc.*, 63 B.R. 874, 876 (Bankr. M.D.Ga.1986). Thus, this Court holds that, under *Garcia*, Section 506(b) does not violate the Tenth Amendment to the United States Constitution. *See Kamstra*, 51 B.R. at 832.

B.  *Disallowance of costs and fees under Section 506(b).*

■ Judge Lundin ruled that Section 506(b), as interpreted in *Ron Pair Enterprises*, does not allow the County to recover post-petition costs and fees because the County's claim arose by operation of law and not by a consensual agreement. *Brentwood Outpatient Ltd.*, 134 B.R. at 270. Nevertheless, the County claims that *Ron Pair Enterprises* is not controlling. *See* Reply Brief of Williamson County, Tennessee at 15–16.

Although Tennessee's property tax statute provides for penalties, fees and costs to be collected upon the filing of a suit to enforce a tax lien against real property, *see* TENN.CODE ANN. §§ 67–5–2410(a)(1)(A) (1989) (attorneys fees), 67–5–2421(a) (1989), 8–21–601 (1988), and 8–21–701(55) (Supp. 1991) (court costs), the United States Supreme Court has clearly indicated that, under 11 U.S.C. Section 506(b), "[r]ecovery of fees, costs, and charges ... is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, post-petition interest is the only added recovery available." *Ron Pair Enterprises*, 489 U.S. at 241, 109 S.Ct. at 1030, 103 L.Ed.2d at 298. Hence, because the County's claim is a nonconsensual lien, fees, costs, and charges are not allowable to the County under Section 506(b), notwithstanding the existence of adequate collateral, because of the absence of any contractual entitlement thereto. *Accord Matter of Pointer*, 952 F.2d 82 (5th Cir.1992). *See also* 3 Lawrence P. King, COLLIER ON BANKRUPTCY, ¶ 506.05 at 506–42 (15th ed. 1992). But cf. *In re Anderson*, 28 B.R. 231 (Bankr.N.D.Ga.1983) (holding prior to *Ron Pair* that Section 506(b) authorizes the award of post-petition interest and costs of collection, including reasonable attorneys' fees, to priority secured creditors to the detriment of junior creditors secured by the same property).

■ Finally, regarding the allowance of the County's costs and fees as unsecured claims, Judge Lundin disallowed the costs and fees as part of the County's claim in toto. On the other hand, one commentator has indicated that claimants may be allowed to assert additional charges, including fees and costs, as part of an unsecured claim under 506(a). King, COLLIER ON BANKRUPTCY, ¶ 11.05 at 11–47. This Court finds, however, that Judge Lundin's ruling is supported by the Supreme Court's clear holding in *Ron Pair Enterprises* that fees and costs are only allowed under Section 506(b) if they are provided for in a consensual agreement and, therefore, holds that the County's costs and fees are not allowed even as unsecured claims.

C.  *Allowance of statutory penalties as part of the County's secured claim.*

■ The Committee argues that the Bankruptcy Court erred in holding that the County's oversecured claim for real property taxes should include statutory penalties which had not accrued at the date of filing of the Debtor's bankruptcy petition. *See* Brief of Brentwood Outpatient, Ltd. Bond-

holder Committee at 13 [hereinafter Committee's Brief]. The Committee's argument is essentially that penalties fall within the "fees, costs, or charges" categories explicitly disallowed under Section 506(b) unless the claim arises under a consensual agreement. *See id.* at 17. Judge Lundin reasoned that because tax penalties were disallowed under the old Bankruptcy Act, the absence of a similar disallowing provision in the Bankruptcy Code implies that tax penalties are allowable under the Code. *Brentwood Outpatient Ltd.*, 134 B.R. at 271–72. Judge Lundin bolstered this reasoning with the finding that the legislative history to Section 506(b) does not reveal that that provision was intended to include penalties. *See id.* at 272. Hence, Judge Lundin specifically distinguished between fees, costs, and charges as being allowed but only as part of an oversecured claim under a consensual agreement, on the one hand, and penalties which are not addressed in Section 506(b), on the other hand.

Courts have split over whether Section 506(b) bars recovery of a post-petition, nonconsensual claim for tax penalties. The Fifth Circuit recently held, in a Chapter 11 case, that *Ron Pair Enterprises* dictates that state taxing units are not entitled to post-petition penalties, fees, and costs as part of their secured claims. *Matter of Pointer*, 952 F.2d 82 (5th Cir.1992) (following the Second Circuit's reasoning in *In re Parr Meadows*, 880 F.2d 1540 (2d Cir.1989) that tax penalties are not allowed under 506(b) because the claims arose, not under an agreement, but by operation of law). The Fifth Circuit, however, did not attempt to distinguish between Chapter 11 and Chapter 7 bankruptcy cases. Distinguishing *Parr Meadows*, Judge Lundin noted that that case was converted to a Chapter 7 case and that penalties are treated differently by the Code in Chapter 7 than they are in Chapter 11 cases. *Brentwood Outpatient Ltd.*, 134 B.R. at 272. Judge Lundin also correctly noted that *Ron Pair Enterprises* did not address the allowance of tax penalties under Section 506(b) but addressed the allowance of interest, fees, costs, and charges under that section. *Id.*

On the other hand, one bankruptcy court has specifically held that a taxing authority *is* allowed to collect penalties in Chapter 11 cases. *In re Russo*, 63 B.R. 335, 337 (Bankr.D.Mass.1986) (holding that although the Bankruptcy Code specifically does not allow penalty claims in Chapter 7 liquidations, the Code does allow tax penalties in Chapter 11 cases). The *Russo* court reasoned that in liquidation, the creditors and not the debtor would be penalized, while in Chapter 11, the debtor continues in business and therefore, bears the penalty. *Id.* Here, this reasoning is confirmed by the Bondholder Committee's opposition to paying the penalties. The stronger reasoning on this issue is that of the *Russo* court and Judge Lundin. Therefore, Judge Lundin's holding on this issue is also affirmed.

### D. *Termination date of the accrual of penalties.*

■ Finally, the County challenges the Bankruptcy Court's determination that the tax penalties accrued only until the effective date of the reorganization plan. Appellant's Brief at 19. The County argues that the unpaid property taxes continue to accrue through the date the taxes are paid. *Id.* The County does not present a strong argument to support its contentions but merely states that for the same state sovereignty arguments it advanced to show that section 506(b) violated the Tenth Amendment, the Bankruptcy Court erred in only allowing accrual of penalties through the effective date of the reorganization plan. *Id.*

Judge Lundin stated that the usual operation under Section 506(b) with respect to oversecured claim holders in reorganization cases is to accumulate interest through the effective date of the plan. *Brentwood Outpatient Ltd.*, 134 B.R. at 274. Judge Lundin thus held that "[o]n the effective date of the plan, the amount of the claim is fixed, and that amount is then subject to payment consistent with the terms of the plan." *Id.* (citing *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 398–99 (Bankr. W.D.Tenn.1991)). Indeed, the Bankruptcy Code itself supports this holding. Under

11 U.S.C. § 1141, "after confirmation of a plan, the property dealt with by the plan is free and clear of *all* claims and interests of creditors...." (emphasis added) The effect of allowing penalties to accrue on unpaid property taxes after the effective date of the plan would be to continue to burden the property and, thus, accrual of penalties should end at the effective date of the plan. But cf. *Oppenheimer v. Oldham*, 178 F.2d 386, 389 (5th Cir.1949) (holding that "the appellant was entitled to receive the full amount of the principal debt, together with interest accrued thereon to the date of payment"). For these reasons, this Court affirms Judge Lundin's holding that penalties accrue only through the effective date of the reorganization plan.

### IV.

For the reasons stated above, the Court concludes that:

I. Section 506 of the Bankruptcy Code does not violate the Tenth Amendment to the United States Constitution by disallowing the payment of costs and fees as part of an oversecured real property statutory lien because Congress, through its bankruptcy power, may circumvent a state's power to tax.

II. The Bankruptcy Court correctly disallowed Williamson County's claim for costs and fees under Section 506(b) of the Bankruptcy Code because the statutory lien arose, not by consensual agreement, but by operation of law.

III. The Bankruptcy Court correctly held that Williamson County's oversecured claim for real property taxes should include statutory penalties because neither the Bankruptcy Code nor case law prohibit the allowance of penalties and the penalties would be assessed to the Debtor under a Chapter 11 case.

IV. The Bankruptcy Court correctly held that the accrual of penalties terminated upon the effective date of the reorganization plan because after confirmation of the reorganization plan, the property must be free and clear of all claims and interests of creditors.

In conclusion, the judgment of the Bankruptcy Court is affirmed in all respects.

An order in accordance with this memorandum will be entered.