43 F.3d 256
 63 USLW 2415, 32 Collier Bankr.Cas.2d 909,
26 Bankr.Ct.Dec. 540
 In re BRENTWOOD OUTPATIENT, LTD., d/b/a Brentwood Outpatient
Medical Center, Debtor.
BONDHOLDER COMMITTEE, Appellee/Cross-Appellant,
v.
WILLIAMSON COUNTY, TENNESSEE, Appellant/Cross-Appellee.
 Nos. 93-5484, 93-5609.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 25, 1994.
Decided Dec. 13, 1994.
 
 Richard A. Buerger (argued and briefed), Elisabeth M. Carson, Petersen, Buerger & Moseley, and William J. Yost (briefed) and Steve Jordan, Yost & Robertson, Franklin, TN, for plaintiff-appellant cross-appellee.
 William L. Norton, III (argued and briefed) and Kevin T. Sommers, Boult, Cummings, Conners & Berry, Nashville, TN, for defendant-appellee cross-appellant.
 Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Several questions about the handling of secured interests in bankruptcy and a constitutional question are presented in this Chapter 11 appeal and cross-appeal involving postpetition additions to local property taxes (penalties, costs and attorneys' fees) which became due under Tennessee law after the debtor in possession failed to pay local property taxes. The primary questions the parties raise are issues of statutory construction under Sec. 506(b) of the Bankruptcy Code concerning the allowance of claims against property which is more valuable than the secured claims against it. We must decide whether in a Chapter 11 proceeding a local government may collect statutory (1) costs and attorneys' fees and (2) penalties of 1/2% per month which accrue on delinquent property taxes after the filing of the bankruptcy petition; and (3) whether any allowable penalties, costs, and fees are due up to the time the delinquent property taxes are paid or only up to the effective date of the Chapter 11 plan. Plaintiff also raises a Tenth Amendment issue, arguing that any interference with its collection of these statutory additions to tax violates the State's reserved powers to tax local property.
 
 I.
 
 2
 Brentwood Outpatient, Ltd., a medical clinic near Nashville, is a voluntary Chapter 11 debtor. The clinic, which owned a three-story, 60,000-square foot, $4 million medical facility on 2.7 acres, filed its petition under 11 U.S.C. Sec. 301 in August 1989. The building was financed through the issuance of local industrial revenue bonds owned by investors represented in this case by the "Official Bondholders Committee." Property taxes on the building for tax year 1989 became due and payable to Williamson County in October 1989, two months after the petition was filed. Under Tennessee law the taxes became delinquent on March 1, 1990, after which the county was entitled to collect interest at 1% per month and penalty of 1/2% per month,[1] as well as costs and lawyers' fees.[2] The parties and the courts below agree that all these taxes and additions to taxes were secured by a statutory first-in-priority lien on the medical facility property.[3]
 
 
 3
 The County asserted a claim for $29,961.12 in base tax, $4,494.17 in statutory interest, $2,247.08 in statutory penalties, $2,996.11 in attorney's fees, and roughly $1,900 in court costs. The value of the real property in question exceeded the total tax claim, making the claim "oversecured." A plan of reorganization proposed by the Bondholders Committee was confirmed on May 14, 1991, effective June 1, 1991. The plan classified the County as a "Class 3" creditor and provided that its claims "shall be paid in cash, in full, on the effective date of the plan." Fourth Amended and Restated Plan, articles II and IV. After confirmation of the plan, the Bondholders Committee paid the base tax plus prepetition and postpetition interest but objected to payment of the statutory penalties, attorneys' fees, and costs. So the amount of money at issue is small, but the legal questions presented are significant, frequently repeated in bankruptcy litigation, and unsettled in the Sixth Circuit.
 
 
 4
 On December 18, 1991, the bankruptcy court, Judge Lundin, in a thoughtful opinion, allowed the payment of delinquent penalties against the objection of the Bondholders Committee but disallowed the payment of costs and fees; held that the County's entitlement to penalties would run only up to the effective date of the reorganization plan, not to the date of payment of the taxes; and allowed postpetition interest up to the date of payment. In re Brentwood Outpatient, Ltd., 134 B.R. 267 (Bankr.M.D. Tenn.1991). (More accurately, the bankruptcy court held that postpetition interest ceased to accrue on the effective date of the plan but that "[a]fter the effective date, Williamson County is entitled to interest through the date of payment to insure payment of the present value of its allowed secured claim." Id. at 274.) On March 17, 1993, the District Court, Judge Wiseman, again in a well-reasoned opinion, affirmed these rulings. In re Brentwood Outpatient, Ltd., 152 B.R. 727 (M.D. Tenn.1993). In its appeal, the County seeks priority for its statutory costs and fees and seeks to have the penalties accrue up to the date of payment. The Bondholders Committee seeks a ruling that tax penalties which accrue postpetition should not be allowed as a valid claim in bankruptcy.
 
 II.
 
 5
 The parties and the courts below have all focused on Sec. 506(b) of Chapter 11 as the most important provision governing the validity of the tax claims in this case. That section provides:
 
 
 6
 To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
 
 
 7
 11 U.S.C. Sec. 506(b) (emphasis added). Because this section on its face seems to give instructions pertaining only to consensual claims (claims "under the agreement"), we initially found it difficult to accept that it was dispositive in the case of a nonconsensual lien such as the instant tax claim. (A "consensual" claim is one arising from a negotiated agreement, such as a security agreement giving the creditor an interest in specified collateral. A "nonconsensual" claim is one arising without a specific agreement, such as a tax claim arising by statute or a judgment lien resulting from litigation.) If Sec. 506(b) controls this case, the result is that a commercial creditor is placed in a better position for the purposes of bankruptcy than a state in its taxing authority. This seems incongruous to us because under the construction given by the courts below a bank or other lender which enters into a security agreement can collect its costs and fees as itemized in the agreement, but a state entitled by statute to collect costs and fees is denied them because they arise by operation of law and not under an agreement. Both the policy and the result clearly seem unwise. However, a historical inquiry into this area of bankruptcy law convinces us that such is in fact the case and that like the courts below we are constrained to so hold. The historical development of bankruptcy law overcomes what we would consider to be sound policy.
 
 
 8
 Early in this century Justice Holmes wrote for a unanimous Supreme Court that the United States had adopted, along with the basic English bankruptcy system, the "English rule" that even secured claims in bankruptcy were not entitled to postpetition interest. Sexton v. Dreyfus, 219 U.S. 339, 343-44, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911). The English rule was thought to serve the interest of providing a "certain date" for winding up the affairs of the bankrupt and distributing the estate. Id. Sexton did not address the treatment of secured tax claims in bankruptcy, and our bankruptcy regime has of course been amended several times since then. In a case at midcentury involving a state tax claim, however, the Court found that "[t]he long-standing rule against post-bankruptcy interest [still] appears implicit in our current Bankruptcy Act." New York v. Saper, 336 U.S. 328, 332, 69 S.Ct. 554, 556, 93 L.Ed. 710 (1949). While taxes received preferred treatment under the 1898 Bankruptcy Act, see Swarts v. Hammer, 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1904); Michigan v. Michigan Trust Co., 286 U.S. 334, 344, 52 S.Ct. 512, 515, 76 L.Ed. 1136 (1932), Justice Jackson wrote in 1949 in Saper that "by the 1926 amendment and the [1938] Chandler Act, Congress assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest." Saper, 336 U.S. at 337, 69 S.Ct. at 559. "Our present statute contains no provision expressly repudiating ... the rule stopping interest [upon filing, which has] been followed for more than a century and a half," id. at 330, 69 S.Ct. at 556, and "the statute as amended did not contemplate any exception in favor of tax claims." Id. at 338, 69 S.Ct. at 559. See also Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946) ("[t]he general rule in bankruptcy and in equity receivership has been that interest on the debtors' obligations ceases to accrue at the beginning of proceedings").
 
 
 9
 Aside from concerns about the efficient administration of bankruptcy, the basic theory behind the "English rule" was that allowing postpetition additions penalized either the debtor, whose "fresh start" was impeded, or the other creditors, particularly unsecured creditors who could cite neither an agreement nor a statute as a basis on which to claim additions. As the Supreme Court has said, secured claims accruing postpetition interest would continue to "absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate." Nicholas v. United States, 384 U.S. 678, 683-84, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966); see also Vanston, 329 U.S. at 163-64, 67 S.Ct. at 240-41.
 
 
 10
 But cases and life are more complex than simple rules of this kind, and so caselaw twists and turns and makes exceptions. In the decades leading up to the comprehensive Bankruptcy Reform Act of 1978, many courts developed an exception to allow creditors with consensual oversecured liens to collect postpetition interest, fees, and costs, to the extent provided in the security agreement. The typical justification was that these creditors had bargained for these rights, giving consideration and identifying specific collateral from which the additional payments should be made, and that courts should protect their expectations. See, e.g., United States v. Harrington, 269 F.2d 719, 724 (4th Cir.1959). But this was an exception. Unsecured creditors continued to have no such entitlement, and even creditors with oversecured liens arising not by agreement (such as tax and judgment liens) were not generally allowed postpetition additions because they had not bargained for them and any postpetition sums they could collect would come at the cost of the unsecured creditors. See In re Boston & Maine Corp., 719 F.2d 493, 497 (1st Cir.1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). Postpetition interest on nonconsensual claims was seen as an "unbargained-for windfall at the expense of the general unsecured creditors of the debtor." Charles Jordan Tabb and Robert M. Lawless, "Of Commas, Gerunds, and Conjunctions: The Bankruptcy Jurisprudence of the Rehnquist Court," 42 Syracuse L.Rev. 823, 845 (1991); see also Jeffrey H. Paravano, "Postpetition Interest on Oversecured Tax Liens--Abandonment of the 'Nonconsensual' Distinction in Bankruptcy Proceedings: United States v. Ron Pair Enters.," 43 Tax Law. 475 (1990).
 
 
 11
 The Courts of Appeals which addressed this issue prior to the enactment of the 1978 Code all followed this rule. See In re Kerber Packing Co., 276 F.2d 245, 246-48 (7th Cir.1960); Harrington, 269 F.2d at 721-24; United States v. Bass, 271 F.2d 129, 130-32 (9th Cir.1959); United States v. Mighell, 273 F.2d 682, 684 (10th Cir.1959); see also Boston and Maine, 719 F.2d at 496-98; for a possible counterexample, see Berryhill v. Gerstel, 196 F.2d 304 (5th Cir.1952). As late as 1988 Collier's endorsed what it characterized as mainstream pre-1978 Code practice to deny postpetition interest on nonconsensual oversecured claims. 3 Collier on Bankruptcy p 506.05 and n. 5b (15th ed.1988). Early decisions under the 1978 Code were mixed, with some awarding postpetition interest on nonconsensual liens, see Best Repair Co. v. United States, 789 F.2d 1080, 1082 (4th Cir.1986), and others following the traditional rule, see United States v. Ron Pair Enters., 828 F.2d 367, 370-73 (6th Cir.1987), rev'd, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); In re Newbury Cafe, 841 F.2d 20, 22 (1st Cir.1988), vacated, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989); Boston & Maine, 719 F.2d at 495-98. However, it is notable that courts on both sides of this question typically began their analysis with the traditional rule and then found that Congress in enacting Sec. 506(b) either codified by implication the traditional denial of postpetition additions to nonconsensual claims or modified that rule to the extent of allowing postpetition interest only.
 
 
 12
 The Supreme Court has recently settled this difference of opinion among the circuits. In United States v. Ron Pair Enters., 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the government sought interest on its tax claim. The Court found that Sec. 506(b) provides for postpetition interest on oversecured claims whether they arise by operation of law or under an agreement, but allows postpetition fees and costs only to consensual oversecured lienholders whose claims arise by agreement. Id. at 241-42, 109 S.Ct. at 1029-30. Justice Blackmun wrote for the majority that
 
 
 13
 The natural reading of [Sec. 506(b) ] entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.
 
 
 14
 Id. at 241, 109 S.Ct. at 1030 (emphasis added). As a result, the Court allowed the United States to collect unpaid withholding and Social Security taxes as well as postpetition interest thereon. The Ron Pair Court was closely divided, with the four dissenting justices finding that Sec. 506(b) codified the traditional rule denying postpetition interest on nonconsensual claims. Id. at 253-54, 109 S.Ct. at 1036-37. All the justices, however, apparently accepted the majority's basic premise that neither consensual nor nonconsensual lienholders are entitled to postpetition additions except to the extent that Sec. 506(b) provides--"in the absence of an agreement, postpetition interest is the only added recovery available." Id. at 241, 109 S.Ct. at 1030. This comports with the traditional understanding as described above, as well as with other sections of the Code which embody the general rule that creditors normally are not entitled to postpetition additions.[4]
 
 
 15
 Williamson County protests that Ron Pair does not control the instant case because it involves the treatment of a federal tax claim in bankruptcy, a situation that does not implicate the concerns of federalism present in the instant case. We agree with the County that our case is different, because we are dealing with state tax claims, but in the end we do not agree that this difference is significant. Only if there were no coherent rule as to postpetition additions to nonconsensual claims could we say that Ron Pair 's holding was limited to federal tax claims. Because we are persuaded that the 1978 Code follows pre-Code law in its general denial of postpetition additions to tax claims regardless of their origin, we find that Ron Pair applies to this state tax claim.
 
 
 16
 We still find it anomalous and unwise, from the points of view of federalism and public policy, that the Bankruptcy Code should favor private creditors over state taxing authorities. We are nevertheless persuaded that Sec. 506(b), when read in historical context, does control this case because it sets out the only exceptions to the general rule disallowing postpetition additions. Since the Supreme Court has ruled decisively on the meaning of Sec. 506(b), it is now clear to us that the bankruptcy court was correct in allowing the County to recover postpetition interest but concluding that "Ron Pair requires disallowance of Williamson County's claim for post-petition fees and costs because Williamson County's claim arose by operation of law and not by agreement." Brentwood Outpatient, 134 B.R. at 270.
 
 
 17
 For similar reasons, however, we find that the courts below erred in allowing the County's claim for statutory penalties which had not accrued at the date of filing of the bankruptcy petition. In allowing the penalty, the bankruptcy court reasoned that Sec. 506(b) does not include, exclude, or even mention penalties; that Sec. 724(a) of the Code makes such penalties voidable in Chapter 7 cases but that the Code is silent as to Chapter 11 cases; and that the legislative history makes it clear that a penalty "lien is made voidable rather than void in chapter 7, in order to permit the lien to be revived if the case is converted to chapter 11, under which penalty liens are not voidable." Brentwood Outpatient, 134 B.R. at 271 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 96, reprinted in [1978] U.S.Code Cong. & Admin. News 5787, 5882). The Bondholders Committee takes issue with this holding primarily on the ground that it is inconsistent with the decisions of two of our sister circuits that penalties fall within the category of "fees, costs, or charges" disallowed by Sec. 506(b) unless the claim arises under a consensual agreement. City of Farmers Branch v. Pointer (In re Pointer), 952 F.2d 82, 89 (5th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992); and In re Parr Meadows Racing Ass'n, 880 F.2d 1540, 1549 (2d Cir.1989), cert. denied, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).
 
 
 18
 The bankruptcy court's analysis suggests that Congress may have intended to allow claims for tax penalties in Chapter 11 but not in Chapter 7 because penalties would be paid in the former by the debtor but in the latter by the creditors. The court carefully distinguished Parr Meadows as a Chapter 7 case, and the district court noted that Pointer, a Chapter 11 case, followed Parr Meadows without noticing this distinction between Chapter 7 and Chapter 11 policy. See generally Brentwood Outpatient, 134 B.R. at 270-73; 152 B.R. at 731-32. However, the bankruptcy court also observed that its "interpretation ... leads to one odd outcome":
 
 
 19
 The Code allows penalties to the holder of an oversecured, nonconsensual tax claim in a Chapter 11 case, but Sec. 506(b) and Ron Pair preclude allowance of post-petition fees, costs and charges. Arguably, fees, costs and charges are more in the nature of "compensation" than are penalties. Elsewhere, the Code demonstrates Congressional intent to treat compensatory claims by taxing authorities more favorably than non-compensatory claims.
 
 
 20
 Brentwood Outpatient, 134 B.R. at 273.
 
 
 21
 The bankruptcy court suggested that Sec. 506(b) "does not address penalties," Id. at 273, and concluded from this silence that the section does not govern the allowability of penalties. The court therefore ruled that the penalties were an allowable claim. Because of our discussion above, in which we found that no postpetition additions to claims are allowable in Chapter 11 cases except as provided by Sec. 506(b), we draw the opposite conclusion--that penalties which accrue postpetition are not allowed to a nonconsensual oversecured claim in bankruptcy.[5] We therefore reverse that portion of the decision below allowing postpetition penalties and note that this result, by differentiating between pre- and postpetition penalties, eliminates the "odd outcome" discussed above. Like consensual lienholders, nonconsensual oversecured lienholders are entitled to interest, penalties, fees, and costs which accrue pre petition; but the only allowable post petition addition for nonconsensual lienholders is interest, which is a compensatory claim. We would prefer to reach a different result, but because of the language of Sec. 506(b) and Ron Pair and the history of additions we are foreclosed.
 
 
 22
 Because we hold that no penalties were allowable, the County's contention that penalties should accrue to the date of payment is moot.
 
 III.
 
 23
 Our holding impinges on the taxing power of the State of Tennessee, and the bankruptcy court's confirmation of the reorganization plan further impinges on that power by causing the transfer of the real property under a trust indenture, free and clear of the County's lien. Indeed, the Bankruptcy Code generally intends the avoidance of such liens, providing that "except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." 11 U.S.C. Sec. 1141(c). The County protests that any disallowance of its statutory tax additions violates the Tenth Amendment[6] by interfering with the state's reserved powers to assess, levy, and collect taxes on local property; and that its lien and in rem rights against the property outside bankruptcy for unpaid penalty, fees, and costs should survive these bankruptcy proceedings, notwithstanding the discharge of the debtor's personal liability and the disallowance of these charges as part of the debtor's reorganization, and that any destruction of these liens by operation of the Bankruptcy Code would violate the Tenth Amendment.
 
 
 24
 The County is correct that the sovereign powers of the State of Tennessee should not lightly be construed to be subordinated to the federal bankruptcy power, but the constitutionality of the orders below and of our own holding today is clear. No one in this case disputes the allowability of the base tax and statutory interest as claims in a Chapter 11 proceeding, only the allowability of other statutory additions. Article I of the United States Constitution gives Congress the power to regulate bankruptcy.[7] While this power is of course subject to fundamental constitutional restraints, Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589, 602, 55 S.Ct. 854, 863, 869, 79 L.Ed. 1593 (1935) (Fifth Amendment), we know of no precedent for the proposition that the Tenth Amendment forbids the relatively minor impact on the states' powers of taxation which results from Congress's decision that the states as creditors are subject to the same bankruptcy regime as all other nonconsensual creditors making claims upon a bankruptcy estate. There would be a constitutional question were Congress to legislate that a bankruptcy court has the power to void all state tax claims once a debtor files for bankruptcy, but this case presents no such question.
 
 
 25
 As discussed above, the Supreme Court found half a century ago that Congress intended to subject all creditors including states to the general presumption against postpetition additions, New York v. Saper, 336 U.S. at 337, 69 S.Ct. at 559, and the Court apparently had no qualms about the constitutionality of this rule as applied to the states as tax creditors. The need to wind up a bankrupt's estate in an efficient and timely manner with fair treatment of all classes of creditors is compelling, and both the traditional rule against postpetition additions and its modification by Sec. 506(b) serve that need. Similarly, the stated goal of permitting the debtor to reorganize and resume a productive role in the economy is served by the provision that once the bankruptcy court approves a reorganization plan the property dealt with will normally be free and clear of existing liens. The Supremacy Clause[8] mandates that these policy decisions by Congress pursuant to its bankruptcy power displace the normal operation of Tennessee's statutory provisions for additions to local property taxes to the extent that the latter command contrary results. As the Supreme Court has explained, "[i]f a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated." New York v. Irving Trust Co., 288 U.S. 329, 333, 53 S.Ct. 389, 391, 77 L.Ed. 815 (1933). A bankruptcy court's lack of power to address state tax liens would "seriously impair the power of the court to administer the estate and adversely affect the power of ... the court to promulgate a reorganization plan." Gardner v. New Jersey, 329 U.S. 565, 577, 67 S.Ct. 467, 473, 91 L.Ed. 504 (1947).
 
 
 26
 We also agree with the district court that under Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985),
 
 
 27
 a court may impose a substantive restraint on Congress's establishment of bankruptcy laws, such as holding that extinguishment of tax lien costs and fees under Section 506(b) is unconstitutional, only if the court were satisfied that the interests of local and state government in their tax revenues inherently could not have been represented in Congress or "the national political process" and that such a holding compensated for the process[.]
 
 
 28
 Brentwood Outpatient, 152 B.R. at 730. As the District Court noted, Sec. 506(b) does not discriminate against state liens relative to either federal liens or other nonconsensual liens such as judgments arising from private litigation. The federal and state taxing interests implicated by those parts of the Bankruptcy Code at issue in this case are therefore identical, id. at 731, and as a result we cannot conclude that the "national political process" which led to the enactment of the Bankruptcy Code was deficient in its representation of the states' interests. See Garcia, 469 U.S. at 554, 105 S.Ct. at 1019. Although Garcia concerned the interstate commerce power, its analysis applies equally to the bankruptcy power and compels the conclusion that no judicial action taken in this case violates the Tenth Amendment.
 
 
 29
 Even conceding Congress's power to regulate bankruptcy, the County argues that the "plain statement rule" prevents the decision we have reached. Because states retain their sovereignty under the Tenth Amendment, Congress in enacting legislation affecting the balance in our federal system between the national and state governments must by plain statement make clear that it has duly deliberated the issue and fully intended to reach that result. " '[T]o give the state-displacing weight of federal law to mere congressional ambiguity would evade the very procedure for lawmaking on which Garcia relied to protect states' interests.' " Gregory v. Ashcroft, 501 U.S. 452, 464, 111 S.Ct. 2395, 2403, 115 L.Ed.2d 410 (1991)(quoting L. Tribe, American Constitutional Law Sec. 6-25 at 480 (2d ed.1988)). However, contrary to the County's arguments, neither Sec. 506(b) nor the provision for destruction of liens represents a recent congressional attempt to invade the states' reserved powers; in fact, Sec. 506(b) relaxes the traditional presumption as to the states by allowing them to collect postpetition interest. The County's argument that Sec. 506(b) does not evince a sufficiently clear congressional intent to encroach on states' reserved powers is therefore inapposite.
 
 
 30
 The County's reliance in this context on New York v. United States, --- U.S. ----, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), is misplaced. In that case, the Supreme Court invalidated that portion of a federal law requiring states to accept ownership of hazardous waste because in our federal system Congress has no power to mandate specific behavior by a state. Id. at ----, 112 S.Ct. at 2435. The instant case is very different because the Code sections at issue mandate no action; instead, they block the full operation of a state law in the context of a federal procedure. The federal bankruptcy power may constitutionally impinge on the state taxing power just as the federal commerce power prevents the states from enacting discriminatory taxes on out-of-state businesses. Moreover, in New York the Court took as well established "the authority of Congress to subject state governments to generally applicable laws." Id. at ----, 112 S.Ct. at 2420. In the instant case, to appropriate Justice Blackmun's words in Garcia, "we perceive nothing in the ... requirements of the [Bankruptcy Code], as applied to [the County], that is destructive of state sovereignty or violative of any constitutional provision. [The County] faces nothing more than the same [rules of bankruptcy] that hundreds of thousands of other [creditors], public as well as private, have to meet." 469 U.S. at 554, 105 S.Ct. at 1019.
 
 
 31
 Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED in part and REVERSED in part and the cause is REMANDED to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Tenn.Code Ann. Sec. 67-5-2010 (1989) provides that "[t]o the amount of tax due and payable, a penalty of one-half of one percent ... and interest of one percent ... shall be added on March 1, following the tax due date and on the first day of each succeeding month[.]"
 
 
 [2]
 Tenn.Code Ann. Sec. 67-5-2101 (1989) provides that "[t]he taxes assessed by the State of Tennessee, a county, ... or other local governmental entity, upon any property of whatever kind, and all penalties, interests, and costs accruing thereon, shall become and remain a first lien upon such property from January 1 of the year for which such taxes are assessed." The statutory provision allowing for the recovery of attorney's fees in back tax matters is Tenn.Code Ann. Sec. 67-5-2410 (1989). The provisions governing court costs in back tax matters are Tenn.Code Ann. Secs. 67-5-2421 (1989), 8-21-601 (1988), and 8-21-701(55) (Supp.1992)
 
 
 [3]
 As of the date of filing of the petition, the taxes at issue were neither due nor delinquent. The County maintains that the taxes "relate back" to a time before the petition was filed, see Tenn.Code Ann. Sec. 67-5-2101 (1989), supra note 2, but we think it possible that the automatic stay provision of Sec. 362(4) might have prevented the lien from attaching. This provision provides that "a petition filed under section 301 ... operates as a stay, applicable to all entities, of ... any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. Sec. 362(a)(4). However, we need not inquire further into this issue as the parties agree that the County has a tax lien
 
 
 [4]
 For example, 11 U.S.C. Sec. 502(b)(2) provides that where a claim is objected to the court "shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that ... such claim is for unmatured interest[.]" 11 U.S.C. Sec. 503 allows payment of taxes and penalties incurred postpetition by the bankruptcy estate, as administrative claims
 
 
 [5]
 We need not decide today whether a consensual oversecured creditor would have priority for postpetition penalties provided for in a security agreement--i.e., whether "penalties" are in the category of "fees, costs, or charges" created by Sec. 506(b). See Judge Lundin's thorough discussion, Brentwood Outpatient, 134 B.R. at 272-73. It may be that Congress did not allow for penalties in Sec. 506(b) precisely because they are punitive rather than compensatory
 
 
 [6]
 "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X
 
 
 [7]
 "The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States[.]" U.S. Const. art. I, Sec. 8, cl. 4
 
 
 [8]
 "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land[.]" U.S. Const. art. VI