United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-41141
_____

In The Matter Of: ENRE LP,

Debtor,

BRIDGEPORT TANK TRUCKS; WEST FORK TANK TRUCKS INC;
BAKER HUGHES OILFIELD OPERATIONS INC; WILSON SUPPLY,
A Division of Smith International, Inc.,

Appellants,

versus

LIEN AGENT,

Appellee.

Appeals from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and BARKSDALE and BENAVIDES, Circuit
Judges.

PER CURIAM:

Appellants seek to recover attorney fees and costs, under
the prior version of 11 U.S.C. § 506(b), as part of their
oversecured statutory materialmen's lien claims against the
debtor's oil and gas wells.  We hold that the applicable statute
does not permit such costs and fees and AFFIRM the judgments of the
bankruptcy and district courts.

**BACKGROUND**

Appellants, various creditors of Chapter 11 debtor EnRe LP ("EnRe"), performed work on oil and gas wells in Texas and Wyoming. Some of Appellants' contracts provided that EnRe would pay costs and attorney fees in the event of litigation to collect what EnRe owed. None had an express security agreement. Instead, following industry practice in the oil patch, Appellants all timely filed for and obtained statutory materialmen's mineral liens (M&M liens) on EnRe's property pursuant to Texas or Wyoming law. Upon EnRe's filing bankruptcy, Appellants duly filed proofs of claim. Appellee, the lien agent, allowed the M&M lien claims and included them in Class 8 of the reorganization plan. The bankruptcy court held that Appellants, as oversecured creditors, were entitled to receive principal and interest, which EnRe paid, but they were not entitled to receive attorney fees and costs under 11 U.S.C. § 506(b). The district court affirmed.[1]

**DISCUSSION**

This court reviews de novo the legal question whether an oversecured lienholder may receive attorney fees and costs under the Bankruptcy Code. See, e.g., U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt), 348 F.3d 89, 91 (5th Cir. 2003).

---

[1] In the alternative, Appellant Baker Hughes Incorporated seeks to recover fees under 11 U.S.C. § 502. This issue is waived, as all parties stipulated that "the only remaining legal issue [is] the proper interpretation and application of 11 U.S.C. 506(b)." Accordingly, we review the decisions of the bankruptcy and district courts addressing § 506(b) only. See, e.g., Ginther v. Ginther Trusts (In re Ginther Trusts), 238 F.3d 686, 689 (5th Cir. 2001).

Congress recently amended § 506(b) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA").[2]  Nonetheless, as the parties agree, the Act's amendments are not retroactive, and the prior version of the statute controls.  See id. § 1501, 119 Stat. at 216.  The controlling version provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Act of Nov. 6, 1978, Pub. L. No. 95-598, § 506(b), 92 Stat. 2549, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 448, 98 Stat. 374 (current version at 11 U.S.C. § 506(b)).

The pre-BAPCPA version of the statute authorizes interest on an oversecured claim without qualification, but it qualifies the availability of fees, costs, or charges by mandating that they be both reasonable and provided for under the agreement under which such claim arose.  See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989).  The parties here dispute only whether the claims for fees and costs are "provided for under the agreement under which such claim arose."

---

[2]  The new statute authorizes collection fees if "provided for under the agreement or State statute under which such claim arose."  11 U.S.C. § 506(b) (emphasis added).

3

The plain language of the statute assumes that creditors who seek fees possess a security agreement that authorizes the charging of collection fees; a general agreement for fees, such as a clause in a labor/supply contract, does not qualify, if it is not the agreement under which the "allowed secured claim" arose. See Rushton v. State Bank of S. Utah (In re Gledhill), 164 F.3d 1338, 1341 (10th Cir. 1999) (explaining that an "'allowed secured claim' is the specific claim presented to the bankruptcy court for payment"). In this case, it is undisputed that state involuntary lien laws, not the work orders or invoices delivered by the creditors to EnRe, constituted the only basis for Appellants' allowed secured claims. Absent security agreements, the claims fail to satisfy the statute's requirement for oversecured creditors' recovery of collection fees.

This requirement, that an agreement covering collection fees must give rise to the allowed secured claim, explains the courts' differential treatment of consensual and nonconsensual liens. As this court has held, "the plain language of § 506(b) distinguishes between voluntary secured claims (i.e., security agreements) and involuntary secured claims (i.e., statutory liens)." City of Farmers Branch v. Pointer (In re Pointer), 952 F.2d 82, 89 (5th Cir. 1992). "All creditors can recover interest on an oversecured claim, but only creditors who have voluntary secured claims can recover penalties, fees and costs." Id.; see also In re Gledhill, 164 F.3d at 1341-42; Bondholder Comm.

4

v. Williamson County (In re Brentwood Outpatient, Ltd.), 43 F.3d 256, 259-61 (6th Cir. 1994).

Appellants, relying on dicta from Ron Pair, argue that the consensual/nonconsensual distinction is not supported by the statute. In a footnote, the Ron Pair Court noted that "other portions of § 506 make no distinction between consensual and nonconsensual liens" and that "had Congress intended § 506(b) to apply only to consensual liens, it would have clarified its intent by using the specific phrase, 'security interest,' which the Code employs to refer to liens created by agreement." Ron Pair, 489 U.S. at 242 n.5, 109 S. Ct. at 1031. Ambiguous as the footnote is, we are bound to follow In re Pointer, which has, along with other courts, considered and rejected Appellants' reading of Ron Pair. The footnote's interpretation is rendered more obscure by the Ron Pair dissent, which acknowledges that "[e]ven under the Court's interpretation, [collection fees] can only be awarded if provided for in a consensual lien." Id. at 251, 109 S. Ct. at 1035 (O'Connor, J., dissenting) (emphasis added).

Appellants' more refined position is that their liens are consensual. Because state law provides for both mineral liens and attorney fees for collection thereof, albeit in separate statutory provisions, and because state law is a backdrop to all contracts performed in the state, it is contended that EnRe "consented" to liens that included such fees under state law. In other words, M&M liens embody a consensual agreement, unlike the purely

5

nonconsensual tax liens at issue in In re Pointer and other cases where no agreement existed between the debtor and lien creditor. See In re Pointer, 952 F.2d at 83 (tax lien); In re Brentwood Outpatient, Ltd., 43 F.3d at 259 & n.3 (tax lien). Although creative, this argument fails: Statutory liens may be inevitable, but they are not consensual. A secured claim based on a statutory lien arises out of state law, not out of the parties' agreement to a lien, even though the parties agreed to do business. See, e.g., Ron Pair, 489 U.S. at 238 n.1, 247 n.9, 109 S. Ct. at 1029, 1034 (referring to M&M-type liens as nonconsensual). If state law did not authorize these liens, Appellants would have pure unsecured claims.

Finally, Appellants argue that their claims represent consensual liens because EnRe expressly agreed to grant them substitute liens through a post-bankruptcy cash collateral order. In its cash collateral order, however, the bankruptcy court carried forward the statutory liens, specifically stating that they "shall have the same priority as the prepetition liens of such M&M Lienholders." The substitute liens merely retained the statutory character of the liens they replaced. They did not "create" a new agreement under which the allowed secured claims arose, thereby giving rise to a right to collection fees under the pre-BAPCPA statute.

## CONCLUSION

6

Because § 506(b), pre-BAPCPA, does not authorize an oversecured creditor's recovery of attorney fees or costs of collection in connection with the statutory M&M liens at issue in these cases, we **AFFIRM.**